Counsel, my name is Andy Nelson. I'm an assistant federal defender from the District of Montana in the Missoula branch office. I'm appearing today representing Jeffrey Douglas Grob. I'm appearing on behalf of my colleague John Rhodes who represented Mr. Grob at the trial court level and also filed the briefing in this case. The issue presented in the appeal today is rather narrow. Should a prior offense be scored under 4A1.2 of the 4A1.2C? More narrowly, is Mr. Grob's prior conviction for criminal mischief in the Justice Court in Flathead County, Montana similar to any of the listed offenses in 4A1.2C and therefore excludable and not scored in calculating his criminal history? As the briefs indicate, it makes a difference in this case. His criminal history category changes from 2 to 3 and the resultant guideline range changes as well. Of course the analysis begins with 4A1.2C itself, which I think the court would agree is not a model of clarity. It starts with the idea that petty and misdemeanor offenses are scored, one point. However, then it lists several offenses and says by whatever name the prior offense is known, if it's received a term of probation of more than a year or a jail term or sentence of incarceration of more than 30 days. And I think the courts in reviewing this guidelines provision have referred to that as a triggering event. That's probably how I'll refer to it this morning. Of course there's the subsection B, which has to do with the prior offense being similar to the instant offense. And it's my perception that that's not really what this appeal is about. Fortunately there's some guidance in interpreting 4A1.2C, most often referred to as 5A1.12, which is a five-factor test that comes straight from a couple of Fifth Circuit cases in Texas. It's a common sense approach as the Hardeman case demonstrates. And I think most significant in this appeal, in the case that's probably most important in defendant's briefing, is United States v. Reyes-Maya, which we would assert is authoritatively on point. In that case a criminal defendant received a fine of $182.50 for some sort of disturbance in a hotel room. The court in the Fifth Circuit applying the Hardeman common sense test, which has now been incorporated into, via application note 12, into 4A1.2C, I should point out application note 12 I believe quotes directly from Hardeman, or amendment 709 does. And in that case the defendant did not score. I think it's clear from the cases that the primary focus, and the five factors are laid out there in application note 12, but it seems that the primary focus is on the punishment actually imposed, not some punishment that could be imposed in the abstract. In the Booker case that's cited in the briefs from the Seventh Circuit makes that point expressly. For example, the first two prongs of the test, a comparison of punishments imposed for the listed and unlisted offenses. Sub 2, the perceived seriousness of the offense as indicated by the level of punishment. And Reyes-Maya says that the sentence imposed is a quote reasonable proxy for the perceived seriousness of the offense. So the first two prongs go primarily, we would assert, to the sentence imposed. And that's where the focus should be in the analysis. So here, if counsel, if I could ask this, just to clarify, if Mr. Grob received a relatively light sentence for his criminal mischief conviction, then you think we should be inclined to view it as a petty offense? I do. I would assert that in light of the five-factor test in the case, Your Honor, it's certainly not determinative. It's a common sense test, which leads one to believe you could consider almost anything. But Mr. Grob received a fine of $130. No supervision, no jail time whatsoever. So I think that's a very important factor for the court to focus on. In fact, let me say that you can look at 4A21.C itself. The triggering event, which I just referred to, takes into note, takes fines into account not at all. In other words, you could receive a $10,000 fine in this, if the prior offense were similar to the listed offense, it would not be counted. Does that make sense? This statute is, this guideline provision is confusing, and I apologize. My point being, it's the punishment action. I think you're making good sense. We should have you revise the guideline. I don't know that that's a job that I would volunteer for, Your Honor, but I appreciate your confidence. So the triggering event is important. It looks at whether you get jail time or supervision, of which Mr. Grob received neither. Of course, incarceration itself is another important determination. One case cited in the briefing is United States v. Clevette, which has to do with the Endangered Species Act and a prosecution for, I think, taking grizzly bears. And the court there says that incarceration is a powerful indicator of the seriousness of the offense. And I think that makes sense. One of the things that bothered me a little about this prior offense compared to the current one, which I know you've suggested, you think is not the main focus in our assessment. But as an aside, at least, it seemed like the prior offense was motivated by retaliation, that he was mad at his landlord. So he took these sort of quasi-violent trashing-the-room actions, and obviously he was mad at his former woman friend. And so he does his cyber-stalking threats. I mean, is the fact that both the prior offense and the current offense have an element of retaliation, is that enough to say they're similar? Well, respectfully, no, Your Honor. I think the argument that, and I think if you read the transcript of the sentencing hearing, it's pretty clear that the parties were confused about what the argument was, but by the end kind of righted the ship, and they're talking about the same thing. But in comparing the offense of cyber-stalking to the prior offense, I think that that argument that those are similar, and therefore the offense should be scored, kind of I mean, a quarter of a million dollar fine, up to five years in federal penitentiary, where Mr. Robb sits as we speak here today, followed by three years of supervised release, which in the reply brief is developed that, you know, probation is punishment, supervised release is punishment, and I think the Gall case says that pretty clearly. So that's kind of where I would start, I think, in responding to your question, Judge. I think the other thing to note is that the focus and the policy seem to suggest that we should focus on the similarities first, that the goal is to exclude petty offenses so that we don't have disparate sentencing for sentences that, offenses that probably aren't serious enough to be scored in the federal system. So coming from that perspective, although there is some animus in the prior offense, there's no question, it's also Mr. Robb's first offense when he's 19 years old. It's easy to sit in hindsight now and say it was indicative of some proclivity for criminal activity, but I think at the time, no one was afforded that perspective. Well, what part, where did the district court, where did he go wrong in your view? Where did the district court judge go wrong? Where did the analysis, he thought that they were similar? I think if you look at pages 26 and 27 of the excerpts of record, Your Honor, is kind of the important point of the sentencing hearing. I think at the beginning of the hearing, the parties were, I think Mr. Rhodes was perhaps asserting that the criminal mischief offense should be compared to cyber stalking, and the parties kind of came around and resolved that that was not the case. So I think the error the district court made in Judge Malloy doesn't err very often, and I say this very respectfully, was to conclude based on application note 12 that the offenses are dissimilar, and that therefore the prior offense should be scored. He thought that criminal mischief and disorderly conduct were dissimilar. Correct. But he didn't find that criminal mischief was similar to cyber stalking. I don't think he did. I think if you, I've read the transcript several times, and I think you'd agree if you look read pages 26 and 27 of the excerpts, that he does not really address that issue, that it's sort of left hanging. And as I responded to Judge Gould, I think comparing cyber stalking to the criminal mischief offense for $130 fine in the Justice Court in Flathead County, Montana, is at the outer limit of reasonableness, that those two offenses are just not similar on their face. I see that my time is up. Thank you counsel. Good morning, may it please the court and counsel. I'm Marsha Hurd and I'm an assistant U.S. attorney out of the Billings, Montana office. This was my case below and my case on appeal. I think the problem or the confusion started in the sentencing hearing when Mr. Rhodes, on behalf of Mr. Grob, posited that the comparison first should be cyber stalking to criminal mischief. That was his first point. And there's some authority for that in the Reyes Maya case. If you look at that case that he cites, their first comparison in that case is to the underlying offense of that conviction. What they say is because criminal mischief is not similar to illegal re-entry into the United States. And so they looked at that part first, and I think maybe that's where some of the confusion came. And I think it is somewhat unclear about what Judge Moy's decision was about that. Whether he actually, after he went through the criminal mischief versus disorderly conduct, whether he then ruled that criminal mischief and cyber stalking were similar. There's some discussion of that in the transcript, but it's really not as clear as it could be. But if you look at the criminal mischief versus disorderly conduct, I think in pages 24 through 27 of the excerpts of record, Judge Molloy was clear in his view that they were not similar. That the elements were different. That the punishments imposed, at least in the case with regard to Mr. Grob, was a fairly light punishment. But sometimes that may not be the best predictor. Maybe it is in terms of the time spent as a judge pro tem in municipal court. We didn't have probation available for most misdemeanors. Plus, we didn't put people in jail because they hadn't committed felonies, because we didn't have jail room. So that may or may not be the best. Right, but it's the, that's how we're told to apply this particular provision. We're supposed to look at the comparison of punishments, the perceived seriousness, elements of the offense. So it really doesn't matter what your application. Right. Make sure that it's calculated correctly. Exactly. And when you consider here what the comparison was of the punishments, Judge Molloy was clear about the fact that he thought those were fairly disparate punishments. Disorderly conduct for all kinds of disorderly conduct with the exception of calling in a fake bomb threat is $100. I mean, it was basically an up to 10 days in jail. Versus the criminal mischief where it could be up to a felony, depending on what the facts were. Yeah, well here in this case, he was only fined $130. Correct, and had to pay restitution. So, which would obviously be a result of what the facts were in that case and that judge's determination. That certainly would have been the justice court, justice's determination at that time regarding this offense. But if you also look at some of the other things, the elements of the offense, the elements of the offense for disorderly conduct are vastly different than any of the elements with regard to criminal mischief. I mean, disorderly conduct under Montana law is very much kind of making a little bit of a public nuisance or a public spectacle of yourself. Making comments or noises or behavior that may be annoying or offensive to other people. Where if you look at the criminal mischief statute, it's causing damage to somebody else's property. And in this case, very much retaliatory damage, kind of the same as what Mr. Grob did later in his cyber-stalking case. And I think that Judge Gould's point about the fact that he was obviously motivated by retaliation is very much what the facts of that case showed by Grob's behavior and by his own admissions. And I think that that is one of the things that talks about the similarity then, if you went back to Mr. Rhodes' first point, between the cyber-stalking offense and the criminal mischief offense. We also look at the level of culpability involved. And in this case, the landlord was involved. And his culpability was basically, he was angry at his landlord and he literally trashed the house with everything that he could find in there to be able to get back at this person. Well, I was looking at the facts there and, you know, I don't know if it's so clear. The probation report mentions at one point that the landlord came after him with a crowbar and then hit his friend's car with a crowbar. It seems like it wasn't just such a one-sided, which is probably why he got only a $103 fine. I mean, it wasn't as though he was trashing someone who hadn't already attacked him in some way. Your Honor, my understanding from the pre-sentence report is that was only an allegation made by Grob. There wasn't anything within that file that indicated that that was accurate, that there was actually – Was he 19 at the time? And he was 19 at the time. Was he a student? No, I don't believe that he was a student at the time. At the time he was a student in his fourth year of social work. He was a semester away from being a graduate social worker. But at the time of his offense, when he was 19, I believe he was just living on his own. He was not a – Does his age at the time of the first offense, is that something that can be considered in whether it should count? I mean, I'm sure that a lot of that brings them into a criminal charge of some misdemeanor or another that they kind of get past. I think that's probably completely accurate, Your Honor, probably for almost all of us. The thing about Mr. Grob is that even at the age that he is now, he hasn't been able to get past that kind of behavior as evidenced by what he did to his former girlfriend in this case. And I think that what he did back then is highly predictive of how he went on to live his life, including all of his conduct during the charging of this case and during the case being actually handled, his evaluation that he needed. And it was very predictive. And that's, again, one of the things that we need to look at. The problem with kind of looking at, okay, should we look at somebody's age? Do we look at what the sentence was? I mean, then it really kind of goes to the So if what he had done was simply smushed some food into the rug and the restitution was only $25, does it not count there, but it does count if it's a lot more damage and it happened when he was older? And then we get to that question about, you know, does criminal mischief in general resemble disorderly conduct or does it resemble it only in this case and on these facts? And that's when we get to the problem about disparate sentencing that the federal you know, kind of one size fits all. If Judge Malloy had not added the criminal history point, I take it he could have sentenced the same number of months but with a different guideline level, right? That's true. He would have been, instead of the 37 to 41 that he was here, he would have been 33 to 41. So it would have been towards the higher end. But the fact that the judge could have sentenced at the same number of months, I take it we shouldn't consider because if the guidelines were calculated improperly, that's a significant error. That's correct, Your Honor. I mean, I think that that's where you have to start according to the Cantrell case and others is you have to have a properly calculated guideline range and if you don't, it has to come back for resentencing. And so whether he would have given him the same 37 months with a lower guideline range is not something that you can consider. If there are no other questions? Yes, Ms. Heard, I do have one. And that is how do you respond to the argument that one reason for the Fifth Circuit's decision in Reyes-Meyer should be followed is that the Texas statutes defining these two that we've been talking about, criminal mischief and disorderly conduct, are similar to the Montana statute? They are very similar, Your Honor. The problem with the Reyes-Meyer case is we don't have a clue what happened in that case because Reyes-Meyer was either intoxicated or just basically said, I don't remember that offense. So we have no facts about what happened. What we know is that he was fined $182 for something that happened at a motel. And I think that that tends to make a difference in terms of what the behavior was for which he was convicted and sentenced. But you're right. The statutes are very much the same from Reyes-Meyer to the Montana statutes. So, Ms. Heard, I just want to raise a point about following the Ninth Circuit rules. You cite in your brief and you rely on an unpublished disposition from the year 2000. Do you know you're not allowed to do that? Yes. Completely improper shouldn't have been done. We started that problem in the sentencing memorandum and carried it over to the appellate brief and it should not have been included. All right. I'm glad that you recognize that. Yes. All right. Thank you, Counselor. Thank you. All right. United States v. Grubb will be submitted.
judges: Mills, Wardlaw, Gould